1  Corrie Yackulic, WSBA No. 16063
   **Corrie Yackulic Law**
2  110 Prefontaine Place South, Suite 304
3  Seattle, WA 98104
   P: (206) 787-1915 | F: (206) 299-9725
4  corrie@cjylaw.com
5
6  Laurel L. Simes
   *Admitted Pro Hac Vice*
7  Kevin S. Dalia
   *Admitted Pro Hac Vice*
8  **Levin Simes LLP**
9  1700 Montgomery Street, Suite 250
   San Francisco, CA 94111
10 P: (415) 426-3000 | F: (415)-426-3001
11 llsimes@levinsimes.com
12 kdalia@levinsimes.com

13              IN THE UNITED STATES DISTRICT COURT
14             FOR THE EASTERN DISTRICT OF WASHINGTON

| 15 | JEFFREY HUNTINGTON, | Case No.: 4:22-cv-05014-ACE |
|---|---|---|
| 16 | Plaintiff, | |
| 17 | | Assigned to Hon. Alexander C. Ekstrom |
| 18 | vs. | |
| 19 | SMOKE CITY FOR LESS LLC d/b/a SMOKE CITY FOR LESS; VAPOR BEAST LLC; AND DOES 2-50 | **THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| 20 | | |
| 21 | | |
| 22 | Defendants. | |
| 23 | | |

24     COMES NOW, Jeffrey Huntington (hereinafter "Plaintiff"), by and through
25 his attorneys of record, and pursuant to Fed. R. Civ. Proc. 15(a)(2), hereby submits
26 his Third Amended Complaint against Defendants Smoke City for Less, LLC and
27 Vapor Beast LLC.
28

Third Amended Complaint
Page **1** of **18**

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

# I. INTRODUCTION

1. Plaintiff brings this action because of injuries and damages he sustained on or around November 7, 2019, when a lithium-ion battery purchased through retailer Smoke City for Less for use with his e-cigarette spontaneously and without warning exploded in Plaintiff's pocket.

2. Vapor Beast, LLC distributed the lithium-ion battery to the retailer.

3. Plaintiff was initially taken to Good Shephard Hospital in Hermiston, OR, and then subsequently transferred to the Legacy Emanuel Chronic Wound Burn Center, 3001 N. Gantenbein Ave, Portland, Oregon 97227, where he was treated for second and third-degree burns.

4. The lithium-ion battery was purchased in 2019 through Smoke City for Less.

5. Smoke City for Less promoted, distributed, sold, or otherwise placed the lithium-ion battery purchased by Plaintiff into the stream of commerce.

6. As a result of the battery failure, Plaintiff suffered severe and permanent injuries. Defendants Smoke City for Less, LLC and its subsidiary Smoke City for Less, and Vapor Beast LLC are directly and vicariously liable for Plaintiff's injuries and damages.

# II. PARTIES

6. Plaintiff Jeffrey Huntington is a resident of and domiciled in the State of Oregon. At the time of the incident that forms the basis of this lawsuit, Plaintiff resided in Plymouth, Washington. He moved to Oregon in 2020.

7. At all times material hereto, Smoke City For Less LLC d/b/a Smoke City for Less (hereinafter "Smoke City"), is and was a Washington Corporation with its principal place of business located at 3600 W Clearwater Ave, Kennewick, WA 99336. Its registered agent for service is Ibrahim Jaber, who may be served at the same address.

Third Amended Complaint
Page 2 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

8. Upon information and belief, Smoke City operates no fewer than four separate locations in the greater Pacific Northwest. It has three stores in the State of Washington, one in Pasco, one in Richland, and one in Kennewick. Its Oregon retail location, which does business as "Smokecity4less," and from which Plaintiff purchased the LG MH1 3200mAh 10A rechargeable lithium-ion battery that exploded and injured him (hereinafter "the Subject Battery"), is located at 125 SE 4th St., Hermiston, Oregon 97838.

9. Upon information and belief, and at all times relevant hereto, Smoke City was and is engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling rechargeable 18650 lithium-ion batteries like the Subject Battery.

10. Defendant Vapor Beast, LLC (hereinafter "Vapor Beast") is a limited liability company organized under the laws of Delaware with branches in Pennsylvania, Washington, California, Florida, and Kentucky. Defendant conducts business in the state of Washington by distributing and placing products into the stream of Washington commerce by distributing them to retail stores, agent(s), and/or apparent agents, which caused severe injuries and lifelong damages to Plaintiff.

11. LG Chem Ltd. (hereinafter "LG Korea") has been dismissed as a party to this action. Information regarding LG Korea is provided herein for context in relation to pleading claims under the Washington Product Liability Act (1981). At all times material hereto, LG Korea is a multi-national chemical corporation founded in Korea in 1947 and organized under the laws of the Republic of Korea. It boasts of leading the global market in the manufacture and sale of lithium-ion batteries like the Subject Battery. It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

Third Amended Complaint
Page 3 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

12. LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the Subject Battery that injured Plaintiff into the stream of commerce.

13. The instant case involves the explosion of a lithium-ion battery and the Subject Battery, and other similar/identical 18650 lithium-ion batteries, which were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of LG Korea and one or more distributors and/or retailers who sell and distribute LG products, including the Subject Battery and similar batteries to consumers.

14. Plaintiff is informed and believes that LG Korea sells its lithium-ion batteries to Chinese companies with the knowledge that they will redistribute its batteries. LG Korea knows these companies are distributors of e-cigarette and personal vaping products, including 18650 lithium-ion batteries like the Subject Battery. LG Korea also knows the Chinese entities to which it sells its products, including its lithium-ion 18650 batteries, redistribute LG's products to e-cigarette and vaping retailers, wholesalers, and distributors in the United States, often after having "rewrapped" LG's batteries.

15. Upon information and belief, LG Korea has a grading process for its batteries, whereby those batteries that fail to achieve a sufficient grade or conform appropriately to standards are not discarded.

16. Instead, LG Korea sells those inferior or nonconforming lithium-ion battery products to other distributors in the interest of profit, with full knowledge that those sub-standard batteries may be bound for individual electronic or other uses which LG Korea publicly disavows, but functionally permits.

17. Plaintiff is informed and believes that LG Korea's grading process identifies a significant number of batteries with cosmetic defects in the wrapper, without a wrapper at all, or which suffer from some other kind of defect. Instead of discarding those batteries, LG Korea knowingly sells those substandard batteries to

Third Amended Complaint  
Page **4** of **18**

Corrie Yackulic Law Firm, PLLC  
110 Prefontaine Place South, Suite 304  
Seattle, WA 98104  
P: (206) 787-1915 | F: (206) 299-9725

various distributors throughout the world who then remove the cosmetically defective or missing wrapper, apply their own wrapping, and sell those batteries for other uses. The practice of rewrapping is prevalent throughout the rechargeable lithium-ion battery industry and is known to LG Korea.

18. Plaintiff is informed and believes that LG Korea knows that the rechargeable lithium-ion batteries it sells to various corporate entities, the vast majority of which are located in the People's Republic of China, flow directly into the United States vape and e-cigarette market and into every state in the Union including Washington and Oregon. LG Korea derives substantial profits from the direct sale of these batteries to the Chinese intermediaries referred to above, and thereby knowingly profits from the enormous demand for these individual rechargeable lithium-ion batteries in the United States vape and e-cigarette market.

19. Plaintiff is informed and believes that LG Korea has known its batteries were reaching the United States e-cigarette and vape market and has not taken steps to curtail the flow of its batteries into that market.

20. At all times relevant, Defendants Does 1 through 50, are individuals or entities, including any successor and/or predecessor companies thereto, that designed, manufactured, produced, assembled, supplied, wrapped, sold, repaired, and/or distributed the subject batteries and/or similar lithium-ion 18650 batteries manufactured by Defendant LG Korea. Upon information and belief, Defendant Smoke City is the product seller of the Subject Battery. Defendant Smoke City is the entity which can provide information as to the distributors, importers, manufacturers, designers, or corporations to which and/or from which it purchased and/or sold the Subject Battery. Plaintiff does not know and cannot ascertain the true names of Defendant Does 1 through 50 despite due diligence on his part. Plaintiff will seek to leave to amend this Complaint if necessary, to reflect the true names and capacities of such fictitious Defendants when ascertained. Plaintiff is

Third Amended Complaint
Page 5 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

informed and believes and thereon alleges that each of the fictitiously named Defendants is negligent or responsible in some manner for the events herein alleged.

21. Defendants Smoke City, Vapor Beast and Does 1 through 50 are hereinafter collectively referred to as "Defendants."

### III. JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332; the Plaintiff and the Defendants are diverse and the amount in controversy exceeds $75,000.00.

23. Defendant Smoke City, at all material times, either directly or through entities promoted, distributed, sold, or otherwise placed the Subject Battery into the stream of commerce. The subject battery was sold for use in Hermiston, Oregon and as a result of the sale, promotion, distribution, placement into the stream of commerce, and/or marketing of such battery, Plaintiff was injured in Washington.

24. This Court has personal jurisdiction over Defendant Smoke City because at all material times Defendant Smoke City was and is a Washington corporation with its principal place of business located within the state.

25. Defendant Vapor Beast, at all material times, either directly or through entities promoted, distributed, sold, or otherwise placed the Subject Battery into the stream of commerce. The subject battery was sold for use in Hermiston, Oregon and as a result of the sale, promotion, distribution, placement into the stream of commerce, and/or marketing of such battery, Plaintiff was injured in Washington.

26. Upon information and belief, these batteries-including 18650 batteries-were sold during the relevant time period both as stand-alone batteries at retailers in Washington and as component parts in products sold in Washington.

27. This suit involves an injury to a then-Washington resident that occurred in Washington and was caused by an LG Korea-manufactured 18650

Third Amended Complaint
Page **6** of **18**

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

1  lithium-ion battery which was distributed, sold, and purchased from product seller Smoke City, a Washington corporation.

28. Upon information and belief, LG Korea also sells its 18650 lithium-ion batteries (many of which have a missing or defective wrapper) to various distributors throughout the world, including to distributors in China. These distributors then apply their own wrappers and sell the batteries for other uses. LG Korea knows and expects that these batteries will be sold in large quantities throughout the United States, including in Washington, with many of the batteries being targeted specifically for the electronic-cigarette market.

29. Upon information and belief, LG Korea, rather than recycling or disposing of its non-conforming batteries, sells them to these Chinese rewrappers because it knows consumers in the United States vape and e-cigarette market, including Washington consumers, will ultimately purchase its batteries, and so knowingly profits from the US and Washington vape and e-cigarette markets.

30. Venue is proper in this Court because a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## IV.    FACTS

**E-Cigarettes**

31. E-cigarettes, which are also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1]  They were first patented in 2003 and have been available for

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

Third Amended Complaint
Page 7 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

sale in the United States since 2007.[2]

32. E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3] E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

33. Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

34. E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

35. E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape. When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

36. At least two deaths have been reported in relation to an exploding e-cigarette.[5]

---

[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.

Third Amended Complaint
Page **8** of 18

**Corrie Yackulic Law Firm, PLLC**
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

37. E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.

38. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[6]

39. Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena. Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco. Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

40. Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[7]

41. In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and

---

[6] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[7] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*. Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).

Third Amended Complaint
Page **9** of **18**

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[8]

**Plaintiff's Injury**

42. Plaintiff began using e-cigarettes in an effort to quit smoking traditional cigarettes.

43. Plaintiff purchased the Subject Battery from Defendant Smoke City at its Hermiston, Oregon location prior to the subject incident as a power source for his Eleaf iStick Pico Mini e-cigarette device.

44. On or around November 7, 2019, Plaintiff was working on his truck in his front yard with the Subject Battery and another battery in his left front pants pocket. Suddenly and without warning, Plaintiff's left pants pocket caught fire. Plaintiff ripped off his pants as quickly as he could.

45. Plaintiff used a fire extinguisher to douse the flames.

46. Plaintiff went to the Good Shepherd Health Care Emergency Room in Hermiston, Oregon, where he received pain medication and was initially diagnosed with second and third degree burns to his left thigh.

47. Plaintiff was transferred the same day by ambulance to the Legacy Emanuel Chronic Wound Burn Center in Portland, Oregon, where Plaintiff received further treatment for his injury and where he stayed for approximately the next nine days before being discharged on or around November 16, 2019.

48. Plaintiff received follow-up treatment for his burns at the Oregon Clinic Burn Specialists in Portland, Oregon.

49. Plaintiff struggled to sit, bend, and stoop for several months after the explosion.

---

[8] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

Third Amended Complaint
Page **10** of **18**

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

50. As a result of the battery explosion, Plaintiff sustained severe, permanent physical and emotional injuries.

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
*DEFECTIVE DESIGN AND MANUFACTURE UNDER THE WPLA*

49. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-48 above.

50. At all times material hereto, Defendants are in the business of selling, retailing, wholesaling, and/or advertising electronic cigarette products, including but not limited to 18650 lithium-ion batteries.

51. Defendants knew or reasonably should have known that consumers would use the Subject Battery with e-cigarettes, and that consumers would keep said battery close to their person in some manner as Plaintiff did here.

52. Defendants marketed, distributed, and sold electronic cigarette products, including but not limited to the Subject Battery and each of its component parts with defects in both the design, inspection, manufacturing and distribution, which made it dangerous, hazardous and unsafe for its intended use. The design, manufacturing and distribution defects in LG Korea's lithium-ion batteries, including but not limited to the Subject Battery, caused them to explode and/or to catch on fire in the course of their intended use.

53. Defendants failed to warn the public and consumers of the dangers in the foreseeable and intended use of their lithium-ion 18650 batteries, including the Subject Battery.

54. The Subject Battery contained a design and/or manufacturing and/or distribution defect when it was marketed and sold by Defendants.

Third Amended Complaint
Page **11** of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

55. The Subject Battery was unsafe for its intended use due to a design and/or manufacturing and/or distribution defect, and it failed to perform as safely as an ordinary customer would expect when used in an intended and foreseeable manner.

56. The risk of danger in the design of the Subject Battery outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture and distribution. Therefore, the Subject Battery presented a substantial and unreasonable risk of serious injury to the users of said products, or those in the vicinity of said products.

57. The Subject Battery was unsafe to an extent beyond that which an ordinary consumer would contemplate.

58. As a direct and proximate result of the defects in the Subject Battery, Plaintiff suffered severe personal injuries.

59. Defendants are liable to Plaintiff under the Washington Product Liability Act. WPLA, RCW 7.72.040(2) in relevant part states:

(2) A product seller, other than a manufacturer, shall have the liability
    of a manufacturer to the claimant if:

(a) No solvent manufacturer who would be liable to the claimant is
    subject to service of process under the laws of the claimant's
    domicile or the state of Washington; or

(b) The court determines that it is highly probable that the claimant
    would be unable to enforce a judgment against any manufacturer;
    …

Third Amended Complaint
Page 12 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

60. Plaintiff is informed and believes that he would be unable to enforce a judgment against any manufacturer. Manufacturer LG Korea has been dismissed from this case for lack of personal jurisdiction.

61. Defendants are liable to Plaintiff under the Washington Product Liability Act, RCW 7.72.040(2)(a)(b).

## SECOND CAUSE OF ACTION
### *FAILURE TO WARN UNDER THE WPLA*

62. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-61 above.

63. At all times material hereto, Defendants were engaged in the business of selling, manufacturing, fabricating, designing, assembling, distributing, inspecting, warranting, leasing, renting, retailing, wholesaling, or advertising lithium-ion 18650 batteries.

64. At the time that Plaintiff purchased the Subject Battery, it lacked adequate warnings on the inside and outside of the packaging and no warnings were imprinted on the Subject Battery regarding the dangers of use, charging, transportation or storage of the Subject Battery.

65. At the time Plaintiff purchased the Subject Battery, it lacked adequate warnings that would reasonably catch Plaintiff's attention, with regard to the use, charging, transportation or storage of the Subject lithium-ion 18650 battery.

66. At the time that Plaintiff purchased the Subject Battery, there were inadequate warnings so as to give a fair indication of the risks of the use, charging, storage and/or transportation of the Subject Battery.

67. At the time that Plaintiff purchased the Subject Battery it lacked adequate warnings of sufficient intensity justified by the magnitude of the risk of the use, charging, storage and/or transportation of the batteries.

Third Amended Complaint
Page **13** of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

68. Defendants knew that consumers would charge, use, store and transport lithium-ion 18650 batteries like the Subject battery.

69. Defendants did not adequately warn the public and consumers of the dangers involved in the reasonable use and storage of the said Subject Battery at issue in this case.

70. Therefore, the Subject Battery presented a substantial and unreasonable risk of serious injury to the users of said battery, or those in the vicinity of use.

71. The likelihood that the Subject Battery would cause severe injuries like those suffered by Plaintiff rendered any warnings and instructions inadequate.

72. Plaintiff is informed and believes that the manufacturer learned, or a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. Plaintiff is further informed and believes that the manufacturer could have, but failed to issue warnings or instructions concerning the danger.

73. Defendants are liable to Plaintiff under the Washington Product Liability Act. WPLA, RCW 7.72.030(1)(b) in relevant part states:

(1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

(b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those

Third Amended Complaint
Page 14 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate."

74. Defendants are liable to Plaintiff under the Washington Product Liability Act. WPLA, RCW 7.72.030(1)(c) in relevant part states:

(c) A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied only if the manufacturer exercises reasonable care to inform product users."

75. Defendants could have provided adequate warnings or instructions but did not.

76. Plaintiff is informed and believes that he would be unable to enforce a judgment against any manufacturer. Manufacturer LG Korea has been dismissed from this case for lack of personal jurisdiction.

77. Defendants are also liable to Plaintiff under the Washington Product Liability Act., RCW 7.72.040(2)(b).

///

Third Amended Complaint
Page 15 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

## THIRD CAUSE OF ACTION
### *NEGLIGENCE UNDER THE WPLA*

78. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-77 above.

79. Defendants are liable to Plaintiff for the injuries he sustained from the use of the Subject Battery he purchased from Smoke City due to its negligent distribution, inspection, marketing, failure to warn, and sale of the Subject Battery.

80. Defendants knew or should have known that consumers, including Plaintiff, would suffer injury as a result of its failure to exercise ordinary care as described herein.

81. Defendants breached the duty of reasonable care it owed Plaintiff in the following ways:

   a. Failing to properly inspect and test LG lithium-ion 18650 batteries before selling them to customers;

   b. Failing to provide reasonable and adequate warnings to consumers and users of the LG lithium-ion 18650 batteries to alert users of the dangerous conditions described herein;

   c. Selling, distributing, and marketing LG lithium-ion 18650 batteries that were defective, unreasonably dangerous, and unfit for consumer use; and otherwise failing to exercise ordinary care in discharging its duties as a seller of consumer products to the general public; and

   d. Failing to take adequate precautions regarding the third-party manufacturers and sellers it partners with are in good standing in their home county or forum.

82. Defendants knew or in the exercise of due care should have known that the LG lithium-ion 18650 batteries would be used without inspection in an

Third Amended Complaint
Page **16** of **18**

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

unreasonably dangerous condition and would create a foreseeable risk of harm to users, such as Plaintiff.

83.  Defendants knew or reasonably should have known that the LG lithium-ion 18650 batteries were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.  Defendant knew or reasonably should have known that ordinary users, like Plaintiff, would not realize the hazards and risks posed by LG lithium-ion 18650 batteries.

84.  At the time of the incident, Plaintiff was not aware LG lithium-ion 18650 batteries presented any risk of injury to him and had not been advised or informed by anyone that LG lithium-ion 18650 batteries could explode or otherwise pose a risk to his health and safety.

85.  Defendants are liable to Plaintiff under the Washington Product Liability Act, RCW 7.72.040(1)(a).

## VI.    PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

A. Medical and incidental expenses incurred and to be incurred;

B. Lost earnings;

C. Pain, suffering, emotional distress, disfigurement, and loss of enjoyment of life, past and future; and

D. Any other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

///
///
///

Third Amended Complaint
Page 17 of 18

Corrie Yackulic Law Firm, PLLC
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
P: (206) 787-1915 | F: (206) 299-9725

1  Dated this 18th day of December 2023

3                              Respectfully submitted,

5                              CORRIE YACKULIC LAW FIRM, PLLC

7                              _____
8                              Corrie Yackulic, WSBA No. 16063
                               **Corrie Yackulic Law**
9                              110 Prefontaine Place South
10                             Suite 304
                               Seattle, WA 98104
11                             Telephone: (206) 787-1915
12                             corrie@cjylaw.com

15                             LEVIN SIMES LLP

17                             _____
18                             Laurel L. Simes
                               *Admitted Pro Hac Vice*
19                             Kevin S. Dalia
                               *Admitted Pro Hac Vice*
20                             **Levin Simes LLP**
21                             1700 Montgomery Street, Suite 250
                               San Francisco, CA 94111
22                             Telephone: (415) 426-3000
23                             Facsimile: (415) 426-3001
24                             llsimes@levinsimes.com
                               kdalia@levinsimes.com
25

27                             *Attorneys for Plaintiff*
28